UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SERIES 15-09-321,<br>    Plaintiff,<br><br>v.<br><br>TRAVELERS COMPANIES, INC,<br>TRAVELERS PROPERTY CASUALTY<br>INSURANCE COMPANY,<br>THE TRAVELERS<br>INDEMNITY COMPANY,<br>TRAVELERS CASUALTY INSURANCE<br>COMPANY OF AMERICA,<br>THE TRAVELERS INDEMNITY<br>COMPANY OF CONNECTICUT,<br>    Defendants. | CIVIL CASE NO.<br>3:23-CV-01344 (JCH)<br><br><br><br><br><br>AUGUST 29, 2024 |

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 49)**

I.    **INTRODUCTION**

The plaintiff, Series 15-09-321, a designated series of MSP Recovery Claims Series, LLC ("MSP"), brings this suit against Travelers Companies and other entities associated with the same (collectively called "Travelers") seeking relief in connection with payments issued by an unidentified Medicare Advantage Organization ("MAO") under the Medicare Secondary Payer Act.  MSP, which asserts it has been assigned MAO's rights and claims, seeks redress for Travelers' failure to satisfy its statutory obligations to reimburse MAO.

1

The court considers Travelers' Motion to Dismiss Amended Complaint ("Mot. to Dismiss") (Doc. No. 49), which MSP opposes. See Memorandum of Law in Opposition to Motion to Dismiss ("Pl's. Memo") (Doc. No. 50). For the reasons discussed below, the court grants the Motion to Dismiss.

## II.   BACKGROUND

### A.   Procedural Background

On January 24, 2024, MSP filed an Amended Complaint. Amended Complaint ("Am. Compl.") (Doc. No. 41). Counts One and Two seek reimbursement of insurance payments made by MAO and double damages pursuant to section 1395y(b)(3)(A) of title 42 of the United States Code. Id. at ¶¶ 151, 164. Count Three seeks damages incurred because of Travelers' alleged breach of contract for failing to pay or reimburse MAO's conditional payments. Id. at ¶¶ 165–173. Count Four seeks a declaratory judgment from the court that (1) sets forth Travelers' obligations to coordinate benefits with MAO; and (2) finds secondary payers, like MAO, need not follow certain procedures required by state no-fault statutes when seeking reimbursement from primary payers, including Travelers. Id. at ¶¶ 177–185. Count Five seeks damages because of Travelers' fraudulent concealment of information about its responsibility for conditional payments issued by MAO. Id. at ¶¶ 188–198.

On February 23, 2024, Travelers filed a Motion to Dismiss the action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief may be granted per Rule 12(b)(6). See Mot. to Dismiss; Memorandum of Law in Support of Motion to Dismiss ("Defs.' Memo") (Doc. No. 49-1); Reply Memorandum in Support of Motion to Dismiss ("Defs.' Reply") (Doc. No. 51). MSP opposes Travelers' Motion. See Pl's. Memo.

B.      Statutory Background

1.      The Medicare Secondary Payer Act

Medicare, which provides health insurance to those who have certain disabilities or are at least 65 years old, was originally formed as a primary insurance provider. Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc., 596 U.S. 880, 882 (2022).  This meant that Medicare would pay for covered healthcare costs through the Medicare fee-for-service program with secondary insurance providers left to pay the remainder.  MSP Recovery Claims, Series LLC v. Hereford Ins. Co., 66 F.4th 77, 80–81 (2d Cir. 2023).  Congress modified this regime through section 1395y(b) of title 42 of the United States Code, the Medicare Secondary Payer Act.  The Act makes Medicare a secondary payer in certain cases, including when "payment has been made or can reasonably be expected to be made" under a primary insurance plan, which includes automobile or liability plans.  42 U.S.C. § 1395y(b)(2)(A)(ii); see also Hereford 66 F.4th at 80.

In its capacity as a secondary insurance plan, Medicare may make conditional payments in the event the primary insurance plan "has not made or cannot reasonably be expected to make payment . . . promptly[.]"  42 U.S.C. § 1395y(b)(2)(B)(i).  In this way, beneficiaries can readily access timely medical treatment without waiting for a primary insurance provider to determine its liability.  See id.  Such payments are conditional because they are made under the proviso that Medicare will be reimbursed if it is shown that the primary insurance plan was responsible for making the payment.  42 U.S.C. § 1395y(b)(2)(B)(i)–(ii).  Should a primary insurance provider fail to issue a payment—or reimbursement—as required by this statutory scheme, section

3

1395y(b)(3)(A) of title 42 of the United States Code creates a private cause of action whereby a party may seek double damages.

### 2. The Medicare Advantage Program

Wishing to capitalize on "innovations" that "helped the private market contain costs and expand health care delivery options," Congress modified Medicare by forming the Medicare Advantage ("MA") Program.[1]  H.R. Rep. No. 105–217, at 585 (1997); see Hereford, 66 F.4th at 80-81.  The Program allows Medicare beneficiaries to select health insurance plans from private insurers that have contracted with the Centers of Medicare and Medicaid Services ("CMS") situated within the Department of Health and Human Services.  Hereford, 66 F.4th at 81; 42 U.S.C. § 1395w–27(a).  These insurers are known as Medicare Advantage Organizations.  Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66, 70 (2d Cir. 2022).  The MA Program requires the organizations to provide at least the same benefits offered under Medicare's traditional fee-for-service program.  See 42 U.S.C. § 1395w–22(a)(1)(A).

The MA Program adopts the secondary payer scheme set forth in the Medicare Secondary Payer Act.  Hereford, 66 F.4th at 81.  This means a Medicare Advantage Organization is a secondary insurance provider when the conditions described in section 1395y(b)(2) of title 42 of the United States Code are satisfied.  In such cases, the Medicare Advantage Organization is authorized to seek payment or reimbursement from the primary insurance provider and, in so doing, may utilize the private cause of

---

[1] This program was initially titled the Medicare+Choice Program, but Congress renamed it the Medicare Advantage Program in 2003.  Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108–173 § 201(b), December 8, 2003, 117 Stat 2066.

4

action described in section 1395y(b)(3)(A) of title 42 of the United States Code. Aetna, 52 F.4th at 73–75.

### 3. Section 111 Reporting

The Medicare Secondary Payer Act requires primary insurance providers to file section 111 reports[2] when, among other criteria, claims are "resolved through a settlement, judgment, award, or other payment (regardless of whether or not there is a determination or admission of liability)." 42 U.S.C. § 1395y(b)(8)(C); see also Hereford, 66 F.4th at 81–82. Upon filing such a report, CMS must "make an appropriate determination concerning coordination of benefits, including any applicable recovery claim." Id. at § 1395y(b)(8)(B)(ii). A primary insurance provider that fails to file a section 111 report when required to do so may be liable for "a civil money penalty of up to $1,000 for each day of noncompliance with respect to each claimant." Id. at § 1395y(b)(8)(E)(i).

C. Factual Background

Travelers, a primary insurance provider under the Medicare Secondary Payer Act, see Am. Compl. ¶ 41, offers two types of insurance plans relevant to this case. The first are "no-fault" policies that cover medical expenses incurred by customers because of accidents. See id. at ¶ 32. The second are liability policies that indemnify customers who injure third parties. See id. at ¶¶ 39–40. In such cases, Travelers may enter into settlement agreements with the third parties on the customer's behalf. Id.

---

[2] The requirement is so named because it was introduced in section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007. Hereford, 66 F.4th at 81 n. 6.

5

As in other similar suits,[3] MSP offers exemplars to illustrate "thousands of other instances," id. at ¶ 115, whereby Travelers is alleged to have neglected its obligations as a primary insurance provider under the Medicare Secondary Payer Act by failing to submit section 111 reports or to reimburse MAO. Id. at ¶¶ 54, 92–93. To identify its exemplars, MSP relies on the "only two sets of publicly available data" available to it: section 111 reports and official accident reports. Id. at ¶ 60. Through these two sources, MSP "identified [Travelers] as the likely primary payers for conditional payments" issued by MAO. Id.

MSP divides its exemplars into three groups. The first group features individuals who held a Travelers no fault insurance policy and an MAO policy. Id. at ¶¶ 95–99. MSP alleges section 111 reports filed by Travelers as to these exemplars "admit[ ]" that Travelers was the primary insurance provider responsible for reimbursing MAO. Id. at ¶¶ 94, 95(f), 96(f), 97(g), 98(g), 99(g).

The second group is comprised of insureds of MAO who settled with Travelers after being injured in an accident. The section 111 reports issued by Travelers in these cases allegedly "admit[ ]" that Travelers settled with the insureds and is the primary insurance provider responsible for reimbursing MAO. Id. at ¶¶ 100, 101(h), 102(h), 103(h), 104(i), 105(h), 106(i), 107(h), 108(i), 109(h).

The third group represent instances where Travelers failed to file section 111 reports, despite being required to do so. Id. at ¶ 58. MSP identified Travelers' alleged failure to report by "compar[ing] the claims data" shared by MAO "to publicly available

---

[3] E.g., MSP Recovery Claims, Series LLC v. Travelers Indem. Co., No. 3:22-CV-938 (JCH), 2023 WL 4744753, at *3 (D. Conn. July 6, 2023) (describing MSP's use of exemplar claims); MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc., No. 3:20-CV-00305 (JCH), 2021 WL 5563982, at *6 (D. Conn. Nov. 29, 2021) (noting MSP's "ever-shifting" use of exemplars).

6

motor vehicle accident reports to identify instances where Medicare beneficiaries appear to have been involved in crashes." Id. MSP offers five exemplars without any allegation explaining how Travelers is supposed to relate to these unreported claims. See id. at ¶¶ 110–114.

### III.     STANDARD OF REVIEW

####     A.     Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. Id. In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). The court may also rely on evidence outside the complaint in deciding a Rule 12(b)(1) motion. Makarova, 201 F.3d at 113.

####     B.     Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual

allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.

## IV.   DISCUSSION

### A.   MSP Lacks Standing

Travelers seeks to dismiss MSP's suit for lack of standing, Defs.' Memo at 1, while MSP asserts it has alleged facts sufficient to establish standing.  Pl's. Memo at 3.

Pursuant to Article III of the U.S. Constitution, the jurisdiction of federal courts is limited to hearing "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff must show she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).  Without standing, "a court has no subject matter jurisdiction to hear" a plaintiff's claim.  Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005).

MSP has not established standing because it extensively relies on section 111 reports to satisfy the injury-in-fact and causation requirements of standing.  The Second Circuit has explained, however, "that a report filed under [section 111's] provisions does not amount to an admission of liability."  Hereford 66 F.4th at 86.  This is because a primary insurance provider, such as Travelers, "must report claims covered by the MSP Act without considering its liability for those claims: claims for which it is liable and

claims for which it is not liable, alike, must be reported." Id. at 87.  Simply because Travelers filed a section 111 report does not mean it is responsible for paying the claim at issue in the report.  Id. (explaining that primary insurance providers are required to report more than the claims for which they are responsible).

MSP argues that it has adequately demonstrated standing by attempting to distinguish the instant case from Hereford.  See Pl.'s Memo at 4.  First, MSP characterizes the Hereford opinion as being limited to no fault insurance policies and suggests settlement agreements establish standing by showing Travelers' responsibility for conditional payments made by MAO.  Id.  MSP cites Aetna to support its assertion that settlement agreements may establish a primary insurance provider is responsible for reimbursing a secondary insurance provider such as MAO.  Id. at 4–5.

Aetna is inapposite because the plaintiff in that case relied on the details of a settlement agreement between a tortfeasor and an accident victim in asserting the tortfeasor's responsibility for repayment.[4]  See Aetna 52 F.4th at 76; Aetna Life Ins. Co. v. Guerrera, No. 3:17-CV-00621, 2020 WL 4505570, at *6 (D. Conn. Aug. 5, 2020), aff'd sub nom. Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66 (2d Cir. 2022).  Not once does the Aetna Amended Complaint invoke section 111 reports as a basis for the defendants' liability.  See Aetna Amended Complaint, No. 17-CV-00621.  Here, by contrast, MSP relies on section 111 reports—some of which may have been filed in connection with settlements reached between Travelers and accident victims—to

---

[4] Further distinguishing Aetna from this case is the question posed by the Second Circuit in considering Aetna: whether a Medicare Advantage Organization may utilize the private cause of action set forth in the Medicare Secondary Payer Act.  Aetna 52 F.4th at 72–73.  Here, by contrast, the issue is whether MSP can establish injury-in-fact and causation by invoking section 111 reports to demonstrate the reporting party's responsibility for conditional payments made by a Medicare Advantage Organization. See supra Section IV.A.

9

attempt to establish injury-in-fact and causation. See Am. Compl. ¶¶ 62, 72, 86 (explaining that MSP uses section 111 reports to identify instances in which Travelers is responsible for unreimbursed conditional payments issued by MAO). As already established, section 111 reports cannot be used to show Travelers is responsible for these claims.

In response, MSP argues that some of its settlement exemplars often do not rely on section 111 reports to show standing. Pl.'s Memo at 5. However, this assertion is not supported by a review of MSP's Amended Complaint because all the exemplars involving settled claims invoke section 111 reports to allege Travelers is responsible for reimbursing MAO for conditional payments. See Am. Compl. ¶¶ 101(h), 102(h), 103(h), 104(i), 105(h), 106(i), 107(h), 108(i), 109(h) (citing section 111 reports to assert Travelers is the settling party and the primary insurance provider).

Second, MSP argues the instant case is distinguishable from Hereford because MSP offers more than section 111 reports to establish standing. Pl.'s Memo at 5. MSP points to allegations that: "(1) the primary plan settled the reported claim[;] (2) . . . [MAO] also made payments on the same claim Travelers settled; (3) details regarding Crash Report notifications; [and] (4) descriptions of procedures for which . . . MAO made payment[.]" Id. (emphasis removed and citations omitted). A review of the complaint at issue in Hereford, however, shows the details in that complaint are more fulsome than those provided by MSP in the instant case. Compare Hereford Am. Compl. ¶¶ 47–55, 20-cv-04776 (discussing an exemplar, and naming, inter alia, the identity of the secondary insurance provider alleged to have made a conditional insurance payment and the insurance policy number associated with the primary insurance provider), with

10

Am. Compl. ¶¶ 101–109 (discussing settlement exemplars and the nature of the accidents associated therewith, but referring only to an unidentified MAO and omitting the policy numbers associated with the insurance policies the defendants are alleged to have supplied).

Third, MSP argues Hereford did not consider whether a primary insurance provider's contractual obligation may be used to establish standing.  Pl.'s Memo at 6.  This court has previously considered this argument and concluded that Hereford implicitly rejected this contention.  MSP Recovery Claims, Series LLC v. Travelers Indem. Co., No. 3:22-CV-938 (JCH), 2023 WL 4744753, at *6–*7 (D. Conn. July 6, 2023).

The court concludes that MSP has failed to allege injury-in-fact and causation for Counts One through Five.  The Motion to Dismiss all counts of the Amended Complaint is granted.

B.      Denial of Leave to Amend

While the court may not dismiss this case with prejudice for lack of Article III standing, Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016), it may decline to grant MSP leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  Accordingly, the court declines to grant MSP leave to amend its Complaint once again because it "should have been on notice from the outset that the issue of standing would be front and center in this case."  MSP Recovery Claims, 2023 WL 4744753, at *7 (internal quotation marks omitted).  Any amendment would be futile given the clear holdings in Hereford and MSP Recovery Claims.  Both holdings illustrate that standing requires the plaintiff to show the

11

defendants are responsible for the insurance claims at issue, something section 111 reports cannot establish in this case. See Hereford, 66 F.4th at 89; MSP Recovery Claims, 2023 WL 4744753, at *5–*7. Notably, MSP concedes it must rely on section 111 reports to identify claims for which it suspects the defendants are responsible. See Am. Compl. ¶ 60 (explaining that MSP has access to only two sources of public information, one being section 111 reports, to identify claims for which the defendants are responsible); Pl.'s Memo at 7 (describing section 111 reports as a "necessary part" of MSP's allegations but arguing the court should, nonetheless, deny the defendants' Motion to Dismiss).

## V.     CONCLUSION

For the reasons stated above, the court grants Travelers' Motion to Dismiss (Doc. No. 49) for lack of subject matter jurisdiction. Although the dismissal is without prejudice, the court declines to grant MSP leave to amend the Amended Complaint. Travelers' Motion to Dismiss the first Complaint (Doc. No. 32) is terminated as moot.

**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of August 2024.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge